IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

**Plaintiff,**

**v.**                    **CRIMINAL NO.** 10-444 (FAB)

CARLOS M. NEGRON-OLIVELLA [30],

**Defendant.**

MEMORANDUM AND ORDER[1]

BESOSA, District Judge.

## I.    Introduction

On  June  20,  2011,  defendant  Carlos  Negron-Olivella
("defendant")  filed a motion to dismiss the indictment against him.
He  argues  (1)  that  the  government  violated  his  right  to  a  speedy
trial,  as  codified  by  the  Sixth  Amendment  of  the  Constitution  of
the  United  States  and  the  Speedy  Trial  Act  ("STA"),  18  U.S.C.
§  316,  and  (2)  that  the  government  violated  his  Sixth  Amendment
right  to  assistance  of  counsel.   (Docket No. 1128 at 3-4, 12.)   The
Court  denied  defendant's  motion  but  subsequently  vacated  its  order
upon  considering  defendant's  motion  for  reconsideration.   (Docket
No. 1133.)   On July 11, 2011,  the government filed a response in

---

[1] Hannah L. Miller, a second-year student at University of
Michigan Law School, assisted in the preparation of this Memorandum
and Order.

opposition to defendant's motion to dismiss, and on July 18, 2011, defendant filed a reply to the government's response. (Docket Nos. 1225 and 1266.) Defendant's motion to dismiss is currently before the Court for reconsideration. (Docket No. 1128.) For the reasons set forth, defendant's motion to dismiss the indictment is **DENIED.**

## II. Background

On December 8, 2010, defendant Negron was indicted along with 131 other defendants on charges of distribution of controlled substances and conspiracy to possess with intent to distribute controlled substances within 1,000 feet of a protected location, pursuant to 21 U.S.C. §§ 841(a)(1), 846, and 860. He was also indicted on charges of conspiracy to commit a violent crime in violation of 18 U.S.C. § 924(o). The indictment alleged that defendant "supplied 'creepy' marijuana, Percocet, and Xanax to the drug trafficking organization." (Docket No. 3 at 23.)

On December 10, 2010, defendant was arrested in the Middle District of Florida at his residence in Orlando. At the time of defendant's arrest, a consent search of defendant's residence resulted in the seizure of approximately forty-five pounds of suspected marijuana and a .45-caliber pistol. (Docket No. 1225-1 at 1-2.) Defendant admitted that the marijuana belonged to him. Id.

On the day of his arrest, defendant appeared before a magistrate judge in the Middle District of Florida pursuant to Rule 5(c) of the Federal Rules of Criminal Procedure. (Docket No. 355 at 7.) Defendant was provided with a summary of the charges against him and advised of his rights. Id. at 2. Defendant waived his identity hearing and requested that his detention hearing be held in the District of Puerto Rico where the charges against him were pending. Id. at 7. The Court appointed the Federal Public Defender as defendant's counsel for proceedings in the Middle District of Florida, and ordered the removal of the defendant to the District of Puerto Rico. Id. at 5-6.

On January 18, 2011, thirty-nine days after his arrest, defendant arrived in Puerto Rico and was placed under the custody of the U.S. Marshals Service at the Metropolitan Detention Center (MDC-Guaynabo). (Docket Nos. 1128 at 2; 1225 at 2.) The government asserts that the U.S. Attorney's office did not receive notice of defendant's arrival in Puerto Rico and did not learn of defendant's arrival until April 28, 2011, when the government investigated defendant's whereabouts. (Docket No. 1225 at 2.) As a result, defendant was held in detention at MDC-Guaynabo for three and a half months before he was brought before a judicial officer of the District of Puerto Rico.

On May 3, 2011, defendant had a pre-trial interview before an officer of the United States Probation Office and the Court appointed an attorney to represent him in Puerto Rico. (Docket No. 934.)

A detention hearing was held on May 6, 2011, at which defendant was represented by counsel. (Docket No. 970-71.) Defendant was released on bail that same day. (Docket Nos. 971.)

On May 11, 2011, a status conference was held at which counsel for defendant was present. (Docket No. 1005, 1028-1.) Counsel was also present at a subsequent status conference held on June 21, 2011. (Docket No. 1165-1.) At the second conference, a jury trial for the first 33 defendants, including defendant (but excluding those who remain fugitives and those who plead guilty before trial) was set for September 19, 2011. (Docket No. 1165.)

Defendant is currently scheduled to be tried on September 19, 2011 along with several of his co-defendants (excluding those that remain fugitive, have recently been arrested or who have plead guilty since that date) and there is no evidence to suggest that the failure of the government to hold a timely detention hearing had any effect on his trial date. (Docket No. 1165.)

## III. Discussion

### A.   Speedy Trial Claim

The right to a speedy trial is intended to "guard against inordinate delay between public charge and trial." Barker v. Wingo, 407 U.S. 514, 537 (1972) (White, J., concurring).  In his motion for dismissal of the indictment, defendant argues that the prolonged period between his arrival at MDC-Guaynabo and his detention hearing before a judicial officer in the District of Puerto Rico constitutes a violation of his right to a speedy trial under the Speedy Trial Act and the Sixth Amendment of the United States Constitution. (Docket No. 1128.)  Defendant has provided no evidence, however, to suggest that the delay preceding his May 6, 2011 detention hearing impacted his trial date in any way. Although the government admits that it was negligent in failing to schedule further proceedings promptly upon defendant's arrival at MDC-Guaynabo, the period defendant spent in detention prior to his detention hearing is not relevant to a speedy trial analysis except as it is to be included in the amount of time calculated between accusation and trial when assessing whether the Sixth Amendment right was violated.  See Barker, 407 U.S. 514 (1972).  Thus, the Court includes the period of detention, which occurred after accusation and before trial, in its analysis and proceeds to analyze defendant's speedy trial claims using the framework that

governs the Speedy Trial Act and the Sixth Amendment right to a speedy trial.

### 1.   Speedy Trial Act

The Speedy Trial Act, 18 U.S.C. § 3161, provides that a defendant be tried "within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of **the court in which such charge is pending**, whichever date last occurs." 18 U.S.C. § 3161(c)(1) (emphasis supplied).  Defendant did not appear before a judicial officer of this Court until May 6, 2011, at which point the Speedy Trial Act had already been tolled by a March 28, 2011 court order noting that "the ends of justice will be better served by granting a continuance to allow for further discovery and negotiation of plea agreements in this multi-defendant case."   (Docket No. 761 at 4.)   Thus, the seventy-day period never began to run and there was no Speedy Trial Act violation.   See 18 U.S.C. § 3161(c)(1); (Docket No. 1128 at 2.); See also U.S. v. Muñoz-Amado, 182 F.3d 57, 60 (1st Cir. 1999) (holding that the Speedy Trial Act clock did not begin to run until defendant appeared in Puerto Rico, where the charges against him were pending).

### 2.   Sixth Amendment Right to a Speedy Trial

The Sixth Amendment to the United States Constitution guarantees that the accused "enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . ." U.S. Const. amend. VI.   The right to a speedy trial is "fundamental." Klopfer v. North Carolina, 386 U.S. 213 (1967). The only possible remedy for its deprivation is the dismissal of the indictment against the accused whose right has been violated. Barker v. Wingo, 407 U.S. 514, 522 (1972).

"That there was no violation of the [Speedy Trial Act] . . . does not necessarily preclude a court from finding a violation of [defendant's] Sixth Amendment right to a speedy trial." U.S. v. Muñoz-Amado, 182 F.3d 57, 61 (1st Cir. 1999).   "It would be, however, 'an unusual case in which the time limits of the Speedy Trial Act have been met but the Sixth Amendment right to speedy trial has been violated.'" United States v. Mitchell, 723 F.2d 1040, 1049 (1st Cir. 1983) (quoting United States v. Nance, 666 F.2d 353, 360 (9th Cir. 1982)).

The Supreme Court has held that the definition of "speedy" is relative and cannot be "quantified into a specified number of days or months." Barker, 407 U.S. at 523.   Thus, "any

inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." Id. at 522. To assist courts in assessing whether the speedy trial right has been violated in any given case, the Barker court established a set of four factors that courts should consider when determining "how long is too long" for a given defendant to wait before going to trial. Id. at 521-22, 530. The four factors include: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. Id. at 530.

### a. Length of Delay

The first Barker factor, the length of the delay between accusation and trial, serves two purposes. Id. First, it "is to some extent a triggering mechanism." Id. Absent a showing of some delay that is "presumptively prejudicial," the Court need not engage in an inquiry regarding the other factors considered under the Barker framework. Id. Second, the length of delay serves as one of the four factors to be weighed in assessing whether a defendant's right to a speedy trial has been violated once the analysis has been triggered. Dogget v. United States, 505 U.S. 647, 651-52 (1992). The longer the delay, the more heavily this factor is to be weighed against the government. See Id.

A bright-line rule has not emerged from the First Circuit Court of Appeals to govern what length of delay is to be considered presumptively prejudicial for purposes of triggering the Barker analysis. See Barker, 407 U.S. at 530. Rather, the Court must consider the specific circumstances of each case to determine whether a delay is presumptively prejudicial. Id. at 530-31. The Supreme Court has noted, for instance, that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." Id.

The charges brought against defendant in this case are for a complex drug trafficking conspiracy. (Docket No. 16.) Defendant is one of 132 charged defendants and he faces multiple conspiracy charges. Id. Given the size and complexity of the case before the Court, the delay between arrest and trial that can be tolerated is greater than it would be if the case were for a simple street crime. See Barker, 407 U.S. at 530-31.

"The right to a speedy trial attaches upon arrest or indictment, whichever occurs first." See United States v. MacDonald, 456 U.S. 1, 6-7 (1982). Thus, in this case, time began to accrue for Sixth Amendment purposes on December 8, 2010, the date on which defendant was first indicted. (See Docket No. 3 at 23.)

In <u>Dogget v. United States</u>, 505 U.S. 647, 652 n.1 (1992), the Supreme Court noted that "depending on the nature of the charges, the lower courts have generally found postaccusation delay presumptively prejudicial at least as it approaches one year." In this case, a total of 232 days, or roughly nine and a half months, will have passed between the date defendant was indicted and the date of defendant's trial, which is scheduled to take place on September 19, 2011. (<u>See</u> Docket No. 1165.)

The First Circuit Court of Appeals has held a delay of eight to ten months to be presumptively prejudicial. <u>See</u> <u>United States v. Johnson</u>, 579 F.2d 122 (1st Cir. 1978) (eight month delay); <u>United States v. Fay</u>, 505 F.2d 1037 (1st Cir. 1974) (nine month delay); <u>Isaac v. Perrin</u>, 659 F.2d 279 (1st Cir. 1981) (ten month delay). In those cases, however, the defendants were charged with simple street crimes and the indictments involved few defendants. <u>See</u> <u>Johnson</u>, 579 F.2d at 123; <u>Isaac</u>, 659 F.2d at 282; <u>Fay</u>, 505 F.2d at 1037. In contrast, the case before this Court is large and complex. Thus, it is possible that a nine and a half month delay between accusation and trial, in this case, does not require further inquiry. <u>Compare</u> <u>Johnson</u>, 579 F.2d at 123 (concluding that an eight month period between accusation and trial in combination with the "simple nature of the charge" was

sufficient to prompt further inquiry); Isaac, 659 F.2d at 282
(concluding that a ten month period between accusation and trial in
combination with the "simple nature of the charge" was sufficient
to prompt further inquiry).  The nine and a half month period
between accusation and trial, however, falls near the border of
what has been considered presumptively prejudicial.  Thus, in the
interest of caution, the Court will proceed to apply the Barker
analysis to the facts of this case.  See Barker, 407 U.S. at 530.

        Once the Barker analysis has been triggered,
"the [C]ourt must then consider, as one factor among several, the
extent to which the delay stretches beyond the bare minimum needed
to trigger judicial examination of the claim."  Doggett, 505 U.S.
at 652.  Here, the delay barely reaches the "presumptively
prejudicial" threshold.  Accordingly, the Court will assign only
minimal weight to this factor.

### b.   Reason for Delay

        The second Barker factor is the reason for a
delay between accusation and trial.  Barker, 407 U.S. at 531.  In
Barker, the Supreme Court established a sliding scale that courts
can use to determine how to weigh any given reason for an extended
period of time between accusation and trial:

> "A deliberate attempt to delay the trial in order to
> hamper the defense should be weighted heavily against the
> government.  A more neutral reason such as negligence or

overcrowded courts should be weighted less heavily but
nevertheless should be considered since the ultimate
responsibility for such circumstances must rest with the
government rather than with the defendant.  Finally, a
valid reason, such as a missing witness, should serve to
justify appropriate delay." Id. at 531.

In this case, this factor weighs against a
finding of a Sixth Amendment violation.  Defendant was indicted on
December 8, 2010. On March 28, 2011, the Court issued an order
tolling the Speedy Trial Act "in the interest of justice."  The
Court determined, sua sponte, that "the ends of justice will be
better served by granting a continuance to allow for further
discovery and negotiation of plea agreements in this
multi-defendant case."  (Docket No. 761 at 4.)  Although the
government does not explicitly assert a reason for the nearly nine
and a half month period that will have expired between defendant's
indictment and scheduled trial date, it is clear that the size and
scope of the case is a contributing factor. See Id.  In U.S. v.
Casas, 425 F.3d 23, 33 (1st Cir. 2005), the First Circuit Court of
Appeals concluded that a 40-month delay between accusation and
trial was justified by the fact that the charges had been brought
as part of a "large complex drug conspiracy case" and 350 pretrial
motions had been filed between indictment and trial.  This case is
a similarly complex one. (See Docket No. 16.)  It involves 132
defendants, and a search of the docket reveals that nearly 2,000

pretrial motions have been filed as of July 28, 2011, over one month before the first scheduled trial date.  Given the unwieldy nature of a case of this size, a nine and a half month period between indictment and trial is not unwarranted.  See Casas, 425 F.3d at 33.

This case is notably distinguishable from Casas, however, in one critical respect.  Whereas in Casas, many of the pretrial motions were filed by the defendants, in this case, defendant himself has filed few pre-trial motions.  Accordingly, while the Casas court found that the reasons for delay weighed heavily against the defendant, this Court concludes that this factor weighs only slightly against defendant.  See Casas, 425 F.3d at 34; Barker at 531.

Furthermore, defendant has offered no evidence to suggest that the failure of the government to hold a timely detention hearing upon defendant's arrival in Puerto Rico contributed in any way to the nine and a half month period between accusation and trial.  Defendant will be tried on the same date as 32 of his co-defendants, none of whom faced similar delays.  (See Docket No. 1165.)  Thus, the Court concludes that the reason for the nine and a half month period between accusation and trial weighs against a finding of a Sixth Amendment violation.

### c.   Defendant's Assertion of his Right

The third factor, defendant's assertion of his right, "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker 407 U.S. at 531-32. "The more serious the deprivation, the more likely a defendant is to complain." Id. Thus, failure to assert the right will make it more difficult for defendant to demonstrate that he was denied a speedy trial. Id.

In this case, the third factor weighs against defendant. Although defendant declares that he "requested from his designated case manager to provide any information relating to his case, information relating to the outstanding proceedings before the Court, and to be brought before a judge to know where he stood," there is no record of these requests other than one e-mail sent by defendant's case manager on April 27, 2010 that indicates that defendant had asked about the status of his case. (Docket No. 1128 at 5; Docket No. 1225-4.) There is no indication in the record, however, that defendant specifically asserted his right to a speedy trial, or that he has sought to alter the September 19, 2011 trial date. The evidence suggests only that defendant sought information about the status of his case on one occasion more than four months after he arrived at MDC-Guaynabo. (Docket No. 1225-4.)

Furthermore, defendant was brought before a probation officer for a pre-trial interview six days after he requested information about the status of his case. (Docket No. 1225 at 3.)  Thus, defendant's statement that "requests rendered fruitless" is not entirely accurate. (<u>See</u> Docket No. 1128 at 9.)

### d.   **Prejudice to Defendant**

The fourth <u>Barker</u> factor, prejudice to the defendant caused by the delay, "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. . . . (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."  <u>Barker</u>, 407 U.S. at 532.  The last of these is considered most fundamental.  <u>Id</u>.  "As a general rule, the defendant bears the burden of alleging and proving specific ways in which the delay attributable to the sovereign unfairly compromised his ability to defend himself."  <u>Rashad v. Walsh</u>, 300 F.3d 27, 34 (1st Cir. 2002).  The Supreme Court has stated, however, that "affirmative proof of particularized prejudice is not essential to every speedy trial claim . . . . [W]e generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter,

identify." Doggett, 505 U.S. at 654. Thus, the longer the delay, the greater the presumption of prejudice to the defendant. See id.

Defendant was incarcerated from the date of his arrest on December 10, 2011 until his release on May 6, 2011 (a total of 147 days) and contends that this five-month period of pre-trial incarceration was in and of itself prejudicial. (Docket No. 1128 at 10.) Defendant cites Moore v. Arizona, in which the Supreme Court noted that a delayed period of incarceration can be inherently prejudicial by constraining a defendant's liberty, disrupting his employment, curtailing his associations, "'subjecting him to public obloquy, and [creating] anxiety in him, his family and his friends.'" Moore v. Arizona, 414 U.S. 25, 27 (1973) (quoting United States v. Marion, 404 U.S. 307, 320 (1971)). Although these consequences of incarceration are not to be taken lightly, they constitute "minimal" prejudice for purposes of assessing whether a defendant's right to a speedy trial has been violated. See Barker, 407 U.S. at 534 (concluding that spending 10 months in jail and "living for over four years under a cloud of suspicion and anxiety" constituted "minimal" prejudice where there was "no claim that any of Barker's witnesses died or otherwise became unavailable.")

Defendant has asserted in a conclusory fashion that he experienced unnecessary "anxieties and concerns" as a

result of being incarcerated without knowing the status of his trial, but he has not provided any evidence to support this statement. (Docket No. 1128 at 12.) Nor has defendant provided evidence to suggest that they delay between his indictment and his trial has resulted in or is expected to result in any impairment to his defense. Because the length of delay barely reaches beyond the threshold required to be considered presumptively prejudicial, the presumed prejudice from the delay is assigned minimal weight. See Barker, 407 U.S. at 534. Consequently, the Court concludes that defendant suffered only minimal prejudice from the nine and a half month period between his indictment and trial, despite being held in the custody of the government for nearly six months during that time.

### e.   Conclusion of **Barker** analysis

The Court's findings with respect to each of the Barker factors, taken together, do not amount to a violation of defendant's Sixth Amendment right to a speedy trial. Although the nine and a half month delay between accusation and trial may be considered presumptively prejudicial, it just barely "stretches beyond the bare minimum needed to trigger judicial examination of the claim." Doggett, 505 U.S. at 652. Next, the period between accusation and trial is justified by the size and complexity of this large multi-defendant drug conspiracy case. See Casas, 425

F.3d at 33.  Third, defendant never asserted his right to a speedy trial and has made no effort to advance his trial date.  Finally, defendant has experienced only minimal prejudice as a result of the nine and a half month period between accusation and trial.  See Barker, 407 U.S. at 534.  The Court concludes that these findings, taken together, do not rise to the level required to constitute a violation of defendant's Sixth Amendment right to a speedy trial.

### 3.  Rule 48(b) of the Federal Rules of Criminal Procedure

Defendant separately suggests that the Court should dismiss the indictment against him in accordance with Rule 48(b) of the Federal Rules of Criminal Procedure, which states that "[t]he court may dismiss an indictment, information, or complaint if unnecessary delay occurs in . . . bringing a defendant to trial." This rule leaves the dismissal of an indictment to the discretion of the Court.  Because the Court finds that there has been no violation of defendant's right to a speedy trial under the Speedy Trial Act or the Sixth Amendment, and that the nine and a half month delay between accusation and trial is not "unnecessary," the Court does not see reason to dismiss the indictment against defendant at this time.

**B.   Assistance of Counsel Claim**

In addition to his speedy trial claim, defendant contends that his Sixth Amendment right to effective assistance of counsel was violated by the government's failure to appoint counsel for defendant upon his arrival in Puerto Rico.

When defendant first appeared before the district court in the Middle District of Florida on December 10, 2010, he requested court-appointed counsel.  (Docket No. 355 at 2.)  The court, in response, appointed the Federal Public Defender for the Middle District of Florida to represent defendant "for proceedings in this District in this case." Id. at 5.  Because the appointment was limited to proceedings in the Middle District of Florida, defendant did not retain counsel upon his transfer to the District of Puerto Rico.  Accordingly, the question for the Court is whether defendant's Sixth Amendment right to counsel was infringed upon during the period from January 18, 2011 to May 3, 2011 during which defendant was without legal representation at MDC-Guaynabo.

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI. This guarantee is fundamental.  Argersinger v. Hamlin, 407 U.S. 25, 29-33 (1972).  Its purpose is "to assure fairness in the adversary criminal process."  U.S. v. Morrison, 449 U.S. 361, 364 (1981)

(citing <u>Gideon v. Wainwright</u>, 372 U.S. 335, 344 (1963).  The right attaches upon formal initiation of adversarial proceedings, such as an indictment, and extends to all critical stages of adversarial proceedings after attachment.  <u>Rothgery v. Gillespie County, Tex.</u>, 554 U.S. 191 (2008); <u>Massiah v. U.S.</u>, 377 U.S. 201 (1964). Moreover, "[w]here assistance of counsel is a constitutional requisite, right to furnish counsel does not depend on a request." <u>Carnley v. Cochran</u>, 369 U.S. 506, 513 (1962).  Accordingly, where assistance of counsel is a constitutional requisite, the State has an affirmative duty to ensure that the accused has access to counsel. <u>See</u> <u>id</u>.

In <u>United States v. Cronic</u>, 466 U.S. 648, 659 n.25 (1984), the Supreme Court provided guidance as to what constitutes a "constitutional requisite", recognizing that the right to counsel is not limited to the trial itself but applies to "critical stages" during the period preceding trial as well.  "The Court has identified as 'critical stages' those pretrial procedures that would impair defense on the merits if the accused is required to proceed without counsel." <u>Gerstein v. Pugh</u>, 420 U.S. 103, 122 (1975) (internal citations omitted).

In the majority of cases in which courts have concluded that a criminal defendant's right to counsel was violated, either (1) the defendant had been subjected to an interrogation or formal

proceeding without counsel present, or (2) the defendant had been expressly denied counsel after having requested it.  See, e.g., Spano v. New York, 360 U.S. 315 (1959) (in which defendant's requests for counsel were ignored by interrogators); Massiah v. U.S., 377 U.S. 201 (1964) (in which defendant made incriminating statements in the absence of retained counsel); Gideon v. Wainwright, 372 U.S. 335 (1963) (in which defendant's requests for counsel were denied entirely); United States v. Porter, 764 F.2d 1, 7 (1st Cir. 1985) (in which defendant was interrogated without counsel present after asserting his right to counsel).  Here, there is no evidence that defendant was unrepresented at any "critical stage" that would constitutionally require appointed counsel.  In fact, at all formal proceedings, including his initial appearance in Florida, his pre-trial interview on May 3, 2011, his detention hearing on May 6, 2011, and the status conferences held on May 11, 2011 and June 21, 2011, defendant was represented by court-appointed counsel.  (See Docket Nos. 934, 981, 1005, 1165-1.) Defendant did not participate in any formal proceeding without counsel present, and there is no evidence that any public officer denied or ignored defendant's requests for access to an attorney. Defendant claims that, while at MDC-Guaynabo, he asked his case manager to be allowed to speak to an attorney and that his case manager told him "that there was nothing he could do, and that he

had to wait." (Docket No. 1128 at 9.) Defendant, however, has offered no evidence of this exchange.

In _Gerstein v. Pugh_, the Supreme Court reasoned that the "nonadversary character" of a probable cause determination diminished the import of having counsel present. This Court concludes that simply being held in detention is similarly "nonadversary." Thus, the period during which defendant was held at MDC-Guaynabo without representation does not rise to the level of a "critical stage in the proceedings" as established by Sixth Amendment jurisprudence. _See_, _e.g._, _Gerstein_, 420 U.S. at 103; _Porter_, 764 F.2d at 7; _Massiah_, 377 U.S. at 201.

Defendant has failed to provide evidence that he lacked counsel during any "critical stage" leading up to his trial. _See_ _Cronic_, 466 U.S. at 659 n.25. Nor has he provided evidence that the Court rejected or ignored defendant's requests for court-appointed counsel. Thus, the Court finds that defendant's Sixth Amendment right to counsel has remained intact.

## III. Conclusion

The Court concludes that defendant's right to a speedy trial has not been violated, despite the government's admitted "negligence" in failing to promptly schedule pre-trial proceedings upon defendant's arrival in Puerto Rico. (Docket No. 1225 at 5.) The Court further concludes that defendant's right to counsel has

Criminal No. 10-444 (FAB)                                                  23

not been violated, even though defendant did not retain counsel

during his detention at MDC-Guaynabo.  Accordingly, the Court

**DENIES** defendant's motion to dismiss the indictment against him.

    **IT IS SO ORDERED.**

San Juan, Puerto Rico, August 4, 2011.

                    <u>s/ Francisco A. Besosa</u>
                    FRANCISCO A. BESOSA
                    UNITED STATES DISTRICT JUDGE